Morning, sir. Am I pronouncing your client's name right? Zamichieli. Okay. Thank you. Thank you, your honor, and may it please the court. Alongside my colleague Vartini Parthasarathy, we will be representing Mr. Zamichieli today. I will explain why the district court erred in granting summary judgment. Ms. Parthasarathy will discuss why the court improperly restricted discovery. We would like to reserve three minutes for rebuttal, and if possible, we would like that to come out of Ms. Parthasarathy's time. However you want to do it is fine with us. Cool. Thank you. This case is straightforward. One federal judge concluded that defendants violated Mr. Zamicheli's Fourth Amendment rights when they searched his car without probable cause. When Mr. Zamicheli sued under Section 1983 to vindicate those same rights, a different federal judge concluded that no evidence. This was an error for two reasons. First, the district court failed to consider substantial evidence demonstrating that officers could not have seen inside Mr. Zamicheli's car, regardless of the location of the gun. The only clue as to why comes in footnote 7 on page 10 of the appendix, where the court appeared to mistakenly analyze the issue through the lens of collateral estoppel. Everyone agrees that Judge Schiele's suppression ruling was not binding on the district court, but that is whether a rational jury could reach the same conclusion based on the evidence in the suppression hearing record. None of this has any... How much deference, if any, should Judge Robreno have given Judge Schiele? We don't think that Judge Schiele's credibility determinations were binding on Judge Robreno, and we don't think that they were properly considered. We raise that as sort of a matter of common sense. All of the evidence in the suppression hearing record was sufficient to create a conclusion, as you can see by the fact that one federal judge already looked at that evidence and determined that there was no probable cause. But was the summary, the transcript from the suppression hearing, part of the record at that time? Yes, it was part of the record. We agree with our friends on the other side that it was not attached to the motion opposing summary judgment, but it was clearly pointed to in the record and had been attached to previous pleadings by Mr. Zamicheli. In addition, his attorney directed the court to the places in the record where he could find that testimony, and crucially, the court was aware of that testimony. On page four of the appendix, the court cited multiple facts present in that testimony, such as the fact that Mr. Zamicheli's windows were darkly tinted and the interior light of the car was off, as well as the fact that the window on the side of the officer who claimed to see the gun was rolled up at the time. The court then just failed to consider that evidence. On page nine of the appendix, the court says that the only relevant fact is the location of the gun, when, in fact, there was plenty of other evidence that independently could have supported a verdict in Mr. Zamicheli's favor. Was Mr. Zamicheli proceeding pro se at the time that he took the waiver? No, but we don't think that, I assume you mean the waiver that allowed the parties to proceed to summary judgment, and he was represented at that time, but we don't think that the fact that he was represented bears on the fact that there was sufficient evidence in the record for the court to refuse to grant summary judgment. In other words, our argument does not rely on any particular deference being given to Mr. Zamicheli because he was proceeding pro se. What do we make of your client taking the Fifth? Yeah, so to the extent the district court implicitly based its decision on Mr. Zamicheli's assertion of his Fifth Amendment rights, it failed to conduct the careful balancing test that this court has required in cases like Greystone, Nash, and McMullen. A proper use of that test would not have justified summary judgment. Moreover, to the extent that Mr. Zamicheli were properly precluded from testifying about the location of the gun at trial, he could still testify as to other different matters and testify to the other evidence that I've referenced above, and that would be sufficient to support a reasonable verdict in his favor. Now, those two lawsuits, you know, that appeal had nothing to with this first gun charge. So how is it proper for him to invoke the Fifth? So first, we would say that the propriety of his invocation of the Fifth did not factor into the district court's ruling. Okay, so you're not defending whether it was proper. Well, second, we would say that it was proper. First, the burden of proving impropriety falls on the defendants in the court, and it's a high bar. Any reasonable possibility that it would be incriminating means that it was a proper invocation of the Fifth. Second, he had a second criminal appeal pending at the time, and what he was asking for and ultimately granted in that appeal was resentencing. When a federal judge sentences, they're allowed to consider conduct that was not charged, not convicted, and not related to the charge upon which they're sentencing. Cases like, multiple cases of this court, including U.S. v. Morton, have held that at sentencing, even if a defendant has pled guilty to the charge in question, they can still properly invoke the Fifth Amendment to avoid testifying about the circumstances of the crime, because those circumstances might lead to a harsher sentence. We think that this was a reasonable fear on Mr. Zanichelli's part. Third. Let's say we disagree with that. Even if you disagree with that, we think that the burden of balancing the interests of the parties from Greystone, Nash, and McMullen should have led the court to take different lesser paths to remedy the problem. For example, it could have simply held a hearing to determine whether the invocation of the Fifth was proper, and then proceeded on that basis, and perhaps compelled Mr. Zanichelli to answer the questions that he had refused to answer. All of the cases, or nearly all of the cases cited by defendants, involve the court allowing the party pleading the Fifth to reconsider. Even the several district court cases that they cite involved the court sort of allowing a party pleading the Fifth to reconsider multiple times. United States v. Parcels of Land, for example, in the First Circuit, noted specifically that the district court made multiple attempts to accommodate and gave the defendant multiple chances. In Ray Edmond, similarly, allowed the court asked Edmond if he was willing to come to a deposition after he had invoked the Fifth. And we think that that's what the district court should have done here if it was concerned about the propriety of Mr. Zanichelli's assertion of his rights. If it would be helpful for the court, I would like to say a little bit more to distinguish the two categories of evidence that we have talked about here. In the first bucket, all of Mr. Zanichelli's evidence about whether defendants could see in the car. And we think it's important to recognize that none of this evidence would have even been relevant to talk about at the suppression hearing if the only relevant fact were that the gun were located under the seat, out of sight. The reason why Judge Schiller correctly pointed to this evidence is because it rendered irrelevant the question of whether the gun was on top of or under the seat. Mr. Zanichelli presented photographic evidence and testified, both uncontested by defendants, that his windows were darkly tinted. The stop occurred at 2 a.m. There were no lights on in the car. Officer Andrews is the one who claims to have seen the gun, but the window was rolled up on his side of the car. That was not something he ever contested. All of this evidence is in in his ruling and is uncontested at this stage in the proceedings. A rational jury could clearly look at that and determine that there was no probable cause, and therefore it was legitimate to proceed. If there are no further questions from the panel, I would like to turn things over to my colleague, Ms. Parthasarathy, to explain why, if the district court were still unsatisfied with the state of the evidence, it had an easy out, granting Mr. Zanichelli's Rule 56D motion to reopen discovery. Thank you. Let's hear about the easy out. Yes, Your Honor. The district court's sole stated justification for granting summary judgment was that no admissible evidence supported Mr. Zanichelli's claims. But as Mr. Herman has That was largely because the district court itself abridged discovery and then overlooked Mr. Zanichelli's request to reopen it under Rule 56D. But here, Zanichelli's lawyer expressly agreed to Judge Rubino's proposal to speed up discovery, and they didn't seek any more discovery after 2017. They had a chance to do that. So how can we say, you know, abuse of discretion is a very differential standard. How can we say that was an abuse of discretion to end discovery and implement the same procedure that his lawyer agreed to? We recognize that, but the sole sort of misstep of the district court that we take issue with was its sort of decision to even overlook Mr. Zanichelli's request to reopen discovery under Rule 56D. In his opposition to summary judgment, he explicitly requested additional time to take discovery on his Monell and conspiracy claims, noting that it was self-evident that the defendants possessed information relevant to those claims. And we think that additional discovery on those specific claims would have independently precluded summary judgment here. If Mr. Zanichelli were given the opportunity to discover, for example, personnel files of the individual defendants or records excluding other evidence found by the defendants, that would have called into question the credibility of the defendants and, by extension, the sole evidence that the district court actually considered here, the suppression hearing testimony of the defendants, and thus independently precluded summary judgment. Your briefing doesn't address malicious prosecution, false arrest, and negligence. Are you basically not contesting you're conceding those because they don't seem like they're tied to the Fourth Amendment claim here at all? We're not contesting those claims, but we would note for the court that the district court never fully evaluated each of those individual claims in the first instance. There's still a reasonable question as to whether the defendants in claims like conspiracy or false imprisonment, for example, were aware that the underlying search and, by extension, the underlying detention of Mr. Zanichelli was unconstitutional. If they had that subjective awareness, then the district court should not have granted summary judgments. We would just note that those are fact-specific questions, and we don't think the record is sufficiently developed here to grant summary judgment on those claims. So if we were to send it back, would you be seeking to file an amended complaint to include those claims that Judge Bevis just asked you about? We would seek to proceed directly to trial, Your Honor. We think that there's sufficient evidence in the record based on the competing testimony of Mr. Zanichelli and the defendants, from which a reasonable jury could reach the conclusion that the defendants lacked probable cause to search Mr. Zanichelli's vehicle in the first instance. The probable cause of the search isn't going to affect the false arrest or malicious prosecution claims. That may be true, but at trial, still, Mr. Zanichelli would have the opportunity to examine and cross-examine the defendants who were involved in some of those latter claims, and a jury could have the opportunity to hear those sort of claims and decide on a fully developed record. Are you asking, assuming you do go back, right, are you asking that discovery be reopened, or do you want to go straight to trial on what you have right now? We'd like to go straight to trial, and in the alternative, we would be more than happy to file a more formal affidavit or declaration, either under Rule 5060 or under Rule 26, to detail the sort of precise information that we're looking for on each of those claims, and allow the District Court to make that determination on remand in the first instance. We'd respectfully draw the Court's attention to its cases like Miller v. Beneficial Corp. and Hart v. City of Philadelphia that make clear that when discovery is incomplete, a plaintiff's request for additional discovery under Rule 5060 should be granted as a matter of course. Because discovery was functionally absent in this case, we think that the Court should reverse and remand for further proceedings. Thank you. Thank you. Good morning. Good morning, Your Honor. As a matter of housekeeping, I'm here first because I'm listening on the caption. If the Court has no questions, and I don't know that the time has officially started, I'm happy to cede my time to my co-counsel. I'm here on behalf of Detective James Pitts and Ronald Dove, who are at all times afterthoughts in this case, including the written brief and today's argument. Did the statute of limitations run on those two individuals? Absolutely, Your Honor. The gun was suppressed on December 9, 2011. Ronald Dove was added to this case in January of 2014, and Detective Pitts was added in April of 2020. There's no argument and no basis in the law for as a matter of substantive Pennsylvania law incorporated into federal practice. Mr. Herman should be prepared to express his view on whether there's any dispute on that issue when it comes up for rebuttal. Mr. Herman, let me hear from plaintiff's counsel. We won't hold it against you. Okay. Mr. Herman, let me hear from plaintiff's counsel. Is there anything against these two officers left in this case? I'll just speak from here. With respect to Mr. Dove, we would point, Your Honors, to the fact that Mr. Zantelli was in prison and did not have access to the arrest report until 2013. And as a matter of Pennsylvania law, we believe that there's a plausible basis that the statute of limitations was told with respect to Mr. Dove. That's why, as a matter of prudence, we believe you should allow the district court to make this determination in the first instance. With respect to Mr. Pitts, we agree. They can also renew a motion for summary judgment on the issues that Judge Rebreno did not address. Well, we might see you all again on those issues later. But as we sit here today, we have no questions for you. Appreciate you being here. Thank you, Your Honor. It's good to see you. Good morning. Good morning, Your Honors. My name is Zach Strausberger. I'm from the City of Philadelphia Law Department. I represent all the other officers in the City of Philadelphia. So Mr. Zantelli testified at the suppression hearing that the gun was not where the officers said it was. The question we are here today to discuss is whether that testimony was properly before the district court. I argue it was not. He failed to counter the arrest report in our motion for summary judgment with any useful evidence. He did reference the testimony, so to speak, right? He did reference it, sort of. He did not attach it. He cited to the suppression opinion. I want to note that while appellants do a really great job of making this issue seem as if it was front and center before the district court, in reality, Mr. Zantelli's attorney below barely mentioned it, along with not attaching the suppression hearing. The district court warned Mr. Zantelli in his prior motion for summary judgment that he needed to support his motions by citing two particular parts of materials in the record and reminding him that the court was not required to scour the record to find evidence that would support his claims. And yet, he did not that. The district court also told him he could move to reopen discovery later, correct? The district court said that he could move to reopen discovery later. Absolutely. The district court had a conversation with his attorney, Mr. Cole, in which he said, are you okay with this procedure? And Mr. Cole said, yes, this makes sense. Appellants referred to his Rule 56D motion. He did not actually file a Rule 56D motion. And importantly, the cases they cite are really different than what actually happened here. Here, Mr. Cole wrote a few sentences saying, if you don't think we have enough to oppose summary judgment, then give us some more discovery. Whereas in all the cases he cites, there's someone making an argument about why that person needs specific evidence, usually supported by an affidavit. Mr. Zamichilli attached an affidavit to the opposition to summary judgment, but he didn't say anything about needing more discovery. What's really important in this case is not only did he not attach the testimony, but he also never informed the district court how that testimony would be available at trial. At trial, you have to stand up your deposition or affidavit. Is it his burden to go through all this? Isn't ordinarily, you know, this seems like it's a sanction that wasn't imposed by going through Greystone Nash-type balancing. So, you know, the rules say this could be, if the person testified consistent with the prior statement at trial, hearsay is admissible. So the court just seems to have been confused about how hearsay factored into this. Isn't the right thing to do to send it back? Your Honor, I don't agree. Do you agree that this case is similar to SEC versus Greystone Nash? I don't. Why not? Your Honor, because they were in a world of sanctions. We weren't there yet. We were still in a world of summary judgment, where he had the burden of production to produce evidence and say how it would be admissible at trial. And he didn't do that. If he had attached the transcript to his opposition for summary judgment and said how he intended to make it usable at trial, then we'd be in a different posture. In that case, we probably would have filed a motion to preclude. And then the judge would probably have held a hearing saying, hey, are you really sure you want to invoke the Fifth? Or figured out what sort of mitigation needed to happen. But we never got there because he failed in his opposition to summary judgment to inform the court of what he wanted to do and how he was going to get there. Isn't it enough that he asked the district court to consider the testimony and draw the same conclusions Judge Schiller had and gave the record citations? Why did it have to be to do more than those citations? Because you have to show how that evidence will be usable at trial. His attorney said that he was entitled to testify at trial, but nowhere in the opposition to summary judgment or in the affidavit. You're making a waiver argument, and waiver is a high standard. And aren't the citations enough to preclude your waiver argument? No, Your Honor, because he's still not showing how it would be usable. You say not showing how it would be usable. I mean, it was a credibility determination, and there are a lot of facts that were not in dispute. What do you mean showing that it was usable? The district court was unclear about how Mr. Zamichelli intended to pursue his claim. There's just no indication that he would show up. If he was trying to say that he would show up and testify to the same things that he said at the suppression hearing, he needed to say so. Why? What authority says that he needed to do more than just these citations to avoid waiver? That he has to connect all the dots in this way? Let's see. Well, we could talk about Lyons v. Johnson, which is about how you can't just pick and choose in which discovery efforts to participate. They cite Greystone, but Greystone doesn't really apply because the Greystone defendants offered affidavits and indicated that they were willing to testify. Rule 56 for summary judgment says that you have to counter a motion for summary judgment with some form of evidence, and he's just not there. It appears to me that you relied on the arrest reports to substantiate your assertion that the firearm was observed in plain sight. Why didn't you reference Officer Andrews and Victor's suppression hearing testimonies for that? Your Honor, I have no idea. I think we could have, but that was a choice the counsel below made. That counsel is no longer with the law department, so I could not ask that question. There is no indication that our officers would not be available to testify, unlike here, where Mr. Zamichielli invoked the Fifth Amendment at his deposition, and it was not at all clear what he would do at an actual trial. It's true that in the deposition, he didn't have an opportunity to consult with the criminal counsel. There was a case pending, right? As Judge Bevis pointed out in front of appellants, the case was about something totally different. So it was a gun case, right? It was the second gun case, correct? So his attorney at any point could have, his civil attorney, could have said, hey, let's wait. We need to pause this case. He could have filed a motion for the district court to say, we want to wait until this pending criminal trial is over, and he didn't do that. U.S. v. Certain Real Property, it says upon a timely motion by the claimant, the district court should make special efforts so that somebody isn't prejudiced by the Fifth Amendment invocation. In re-cyber litigation, it says that there should be the six-factor test about when a court should stay a civil proceeding pending an ongoing criminal proceeding. His attorney just didn't do what he needed to do here, and a lot of the briefs sounded like an ineffective assistance of counsel claim, which can't happen in a civil rights case for damages. So I don't think that it was a valid Fifth Amendment invocation. It was about a different case, and it was just about resentencing. But even if it was, his attorney had options. His civil attorney who was at the deposition had options and did not make use of them. Was it improperly a tactical use? Yeah, I think he was trying to avoid discovery, and he's not allowed to do that. What was his tactical use in doing it? I don't know. He never told us, but he was very clear. He had the opportunity in the deposition. In fact, the attorney who represented Mr. Happelbar's clients below even suggested to Mr. Zamichelli, do you want to consult with your attorney here? Do you want to take a pause? And Mr. Zamichelli refused to do so. Mr. Zamichelli held the keys to thwarting summary judgment in his hands. All he needed to do was to oppose the officer's sworn statement that the gun was on the front seat. He declined to do so. So I think that the district court acted appropriately. There was no evidence to contest what the officer said. And so summary judgment had to be entered in his favor. Well, there was no evidence or the evidence was not properly brought to the court's attention. What's your position? There was no admissible evidence because the evidence... It doesn't have to be admissible, but you have to show how it will be admissible. But it's enough that it will be. You're saying that you have to explain exactly how under the case law the same thing could be testified to. So the cases say that it's a little awkward because there aren't that many people who invoke the Fifth Amendment at a deposition after having a suppression hearing where they most of them are the court of appeals saying, hey, district court, there was no indication that people wouldn't testify, so you should have accepted it. But here there was an indication that he wouldn't testify. He invoked the Fifth Amendment and there was no indication that that would change. So it sort of became a duty of his to say how it would become available. I just want to point to discovery for a moment. Mr. Ziamichelli shows no actual and substantial prejudice from any issues of the district court handling of discovery. He is blaming the district court for his own attorney's decisions. He was told what to do and did not do it. Also, with appellants saying they wish to proceed directly to discovery, I think that...  Sorry, that they wish to proceed straight to trial. That seems to be an admission that they don't need any more discovery. He's very confident. Yeah. If they want to do so, I think that'll be interesting because we'll need to have a conversation with the district court about whether he's still going to invoke the Fifth Amendment if he wants to reopen the deposition. It doesn't feel fair to appellees that we don't get to test him. Assuming it goes back, that would be a decision for the district court to come to terms with, right? It would be. And if it were to go back, I agree with what was said earlier that only the Fourth Amendment claim should go back. He admits over and over and over that there was handgun in the car, which would obviate the need for any malicious prosecution or false arrest claim. Those just can't go forward for the admission. Thank you very much. Thank you, Your Honor. In conflating collateral estoppel and admissibility, the district court made a doctrinal error that requires reversal as a matter of law. That alone resolves the question before this court today. Instead of addressing that critical misstep, the defendants point to shortcomings of Mr. Zammichelli's trial counsel below. But on the key issues in this appeal, Attorney Cole did enough. He did argue correctly that Mr. Zammichelli could testify at trial consistent with his prior suppression hearing testimony. He did so on page four of his opposition briefing and on page A650 of the appendix. He also sufficiently directed the court to that testimony, which we know because the district court described it and cited it in its decision below. The errors identified in this appeal are errors of the district court alone, which weren't remand. To say a couple words on the defendants Fifth Amendment arguments, the district court didn't characterize its ruling as a sanction, and it didn't conduct any of the careful balancing analysis that this court requires when a lower court finds an improper indication of the Fifth Amendment. Because it didn't, there is no adequate record from which this court can review Mr. Zammichelli's indication of the Fifth Amendment and determine an appropriate response in the first case. If the defendants wish to argue that Mr. Zammichelli should be precluded from testifying about the location of the gun, the only question to which he actually invoked the Fifth Amendment, they can do so through a motion in limine on remand. But even if Mr. Zammichelli is not convicted, the district court's ruling is not a sanction. Even if Mr. Zammichelli would be barred from testifying about the location of the gun, he could still present testimony and other circumstantial evidence, including the conditions of the car and the conditions of the search, from which a reasonable jury could find, as the suppression hearing judge did, that the defendants could not have seen the gun in plain view and thus lacked probable cause to search Mr. Zammichelli's car. This court should maintain its focus on the merits of this appeal, whether a reasonable jury could reach the same conclusion that a federal judge did when presented with the same evidence. The court should reverse the judgment below and remand for further proceedings. Thank you. Thank you. Thank you, counsel, and thank you, Mr. Dooley, and to the Yale Law School for your pro bono efforts here. They're greatly appreciated. Thank all counsel for their arguments and their briefing, and we'll take this matter into consideration.